# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**LANA PATRICK,** *pro se,*

      **Plaintiffs,**

                              **Case No. 8:24-cv-00999-MSS-NHA**

**v.**

**LISA MCGUIRE, SGT. SHIREMAN
DCPD, and CAPT. ROWE, DCPD,**

      **Defendants.**

_____/

## DEFENDANT LISA McGUIRE's
## DISPOSITIVE MOTION TO DISMISS COMPLAINT
## FOR VIOLATION OF CIVIL RIGHTS (Non-Prisoner Complaint) (Dkt. 1, 1-2)
## <u>WITH PREJUDICE AND MEMORANDUM OF LAW</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant, LISA McGUIRE (hereinafter "McGUIRE"), through counsel, moves to dismiss with prejudice Plaintiff's Complaint for Violation of Civil Rights (Non-Prisoner Complaint) (Dkt. 1, 1-2) (hereinafter "Complaint") and states:

### <u>PRECISE RELIEF REQUESTED</u>

McGUIRE requests dismissal of Plaintiff's Complaint for Violation of Civil Rights (Non-Prisoner Complaint) (Dkt. 1, 1-2) with prejudice.

<u>**MEMORANDUM OF LAW**</u>

### I.      Relief Sought

This case concerns a citizen who mistakenly believes that she has the unfettered right to be present and record in government facilities without restriction. In the instant motion, McGUIRE seeks dismissal of this case with prejudice. On May 16, 2023, Plaintiff attempted to provoke what she believed to be potentially unlawful conduct by government employees of both Pasco County (McGUIRE) and the City of Dade City (Shireman and Rowe) by entering the Pasco County Tax Collector's office ("PCTC") and video/audio recording the customers and employees conducting business there. Plaintiff was politely and legally issued trespass warnings by McGUIRE, Shireman and Rowe at the facility in response to the disturbance. As demonstrated by the Complaint and recording of the events at issue, Plaintiff has failed to state a claim upon which relief may be granted. Specifically, she has failed to allege the violation of any constitutional right by McGUIRE and McGUIRE has not violated any clearly established rights enjoyed by Plaintiff.

### II.     Standard of Review – Rule 12(b)(6) motion to dismiss (including submission of affidavit pursuant to Rule 12(d))

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of a complaint. To survive a motion to dismiss, a plaintiff's complaint "must … contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting

*Twombly*, 550 U.S. at 570). In considering a motion to dismiss under this plausibility

standard, courts follow a two-pronged approach. First, a court must "eliminate

any allegations in [a] complaint that are merely legal conclusions." *Id.* at 1290

(citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))[1]. Second, a court must take any

remaining well-pled factual allegations and, "assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* (citing

*Iqbal*, 129 S. Ct. at 1950) (internal quotation marks omitted).

In the present case, Plaintiff has not alleged sufficient factual matters to state

a claim upon which relief may plausibly be granted. **In fact, as set forth herein,**

**the factual matters alleged by Plaintiff, as well as the affidavit of McGUIRE**

**filed herein pursuant to Fed.R.Civ.P. 12(d)[2], require dismissal with prejudice of**

**all claims against McGUIRE pled in Count I (a 42 U.S.C. §1983 First Amendment**

**claim); Count II (a 42 U.S.C. §1983 First Amendment retaliation claim); and**

---

[1] Of course, labels and legal conclusions, standing alone, are insufficient to state a valid cause of action. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[2] Pursuant to Fed.R.Civ.P. 12(d), McGUIRE is also submitting an affidavit, attached hereto as **Exhibit 1**, establishing that she was acting within her discretionary authority as an Office Manager I for the PCTC when attending to Plaintiff as indicated in the Complaint, and that all actions McGUIRE took were within her job responsibilities. Further, the affidavit establishes that McGUIRE was performing legitimate job-related functions within her power and authority when attending to Plaintiff as indicated in the Complaint.

**Count IV (a 42 U.S.C. §1983 due process violation claim brought pursuant to the Fourteenth Amendment).[3]**

### III. The Complaint and attached video

Plaintiff alleges that she is "an independent Journalist/Activist" who resides in Duval County, Florida. (Dkt. 1-2 at ¶1). On May 16, 2023, she recorded the public employees of the PCTC. (Dkt. 1-2 at ¶6). She did not go into restricted or secure areas, and remained in areas where the public was permitted. (Dkt. 1-2 at ¶7) McGUIRE, identified as an employee and manager of the PCTC, attempted to hand Plaintiff a "no recording policy" and asked Plaintiff to stop recording or leave the building, which Plaintiff refused to do. (Dkt. 1-2 at ¶¶ 8-9).

Following what Plaintiff describes as a "heckler's veto" marked by the PCTC's ceasing of service to customers, Plaintiff advised that she was willing to wait outside for police so customers could continue to be served. (Dkt. 1-2 at ¶¶ 10-11). Later, Plaintiff approached the three Defendants while they were discussing trespassing Plaintiff, at which point Rowe (a Dade City police officer) threatened her with obstruction if she did not move from the public area she was in. (Dkt. 1-2 at ¶¶ 5, 12). McGUIRE informed Plaintiff that Plaintiff was no longer allowed in the PCTC facility, then Shireman (also a Dade City police officer)

---

[3] Count III, a purported Fourth Amendment unreasonable search claim, is brought only against Defendants, SHIREMAN and ROWE, and not McGUIRE.

informed Plaintiff that she would be arrested if she did not leave. (Dkt. 1-2 at ¶¶ 4, 13). Rowe later told Plaintiff she would be arrested for trespassing if she went back into the building, then Rowe and Shireman "lie[d]" to her by saying that she was required by law to provide them with identification for the trespass warning, and that failing do so would result in her arrest. (Dkt. 1-2 at ¶¶ 15-16).

Plaintiff's foray to the PCTC office was recorded and attached to the Complaint as Exhibit 1, which recording belies the accuracy of the Complaint. (Dkt. 6). The recording is referenced multiple times in the Complaint, it is central to Plaintiff's claims, and its authenticity is not disputed. Therefore, this Court may review and rely upon the video in its consideration of the instant Motion under the incorporation-by-reference doctrine. *See Baker v. City of Madison*, 67 F.4th 1268, 1276-1277 (11th Cir. 2023) (applying the incorporation-by-reference doctrine to allow consideration of video evidence to find that a plaintiff had failed to state a claim for excessive force); Fed. R. Civ. P. 10 (c). *See also Saunders v. Duke,* 766 F.3d 1262, 1270 (11th Cir. 2016) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).")[4].

---

[4] Indeed, as the Eleventh Circuit's predecessor warned, a "litigant may be defeated by his own evidence, the pleader by his own exhibits" when "he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940).

Plaintiff entered the PCTC office at about 1:50[5] of the video. According to signage on the door, the PCTC office handles "Auto Tags, Driver Licenses, Birth Certificates, Boat Registrations, Business Tax Receipts, Property Tax Payments, Hunting/Fishing Licenses, Concealed Weapons Permits." (1:46). The video demonstrates that Plaintiff wandered about the office while filming, recorded areas behind counters, and recorded numerous citizens and employees having oral conversations and handling documents which are likely to have contained personal and confidential information. (2:18-2:38; 3:07-3:55, 3:57-4:20, 4:25-4:32, 4:53-4:58, 5:49, 6:31). Indeed, a customer recognized the nature of the intrusion, cautioning Plaintiff that "You can't see our personal information...You can't be recording while we're making transactions." (6:53-6:59).

At 4:38, Plaintiff was handed (but declined to take) the PCTC's Video, Photograph, and Recording Policy. The policy provides that the PCTC will try to accommodate "journalists and those who wish to video, photograph, record, film, or interview" at the facility and is "in place to protect the confidentiality of records and documents exempt from public disclosure and to ensure office operations are not disrupted for our customers." To carry out these goals, the policy prohibits videotaping and other recording "by anyone without prior approval of the tax

---

[5] The time references throughout this Motion refer to the approximate minute:second of the video attached as Dkt. 6.

collector" and prohibits the "[v]ideotaping, photographing, recording, or filming personal documents or conversations that contain information exempt from public record. . ." Critically, the policy provides that "[v]iolators will be requested to cease such activity immediately and/or leave the facility." (4:38). Consistent with the policy, McGUIRE warned Plaintiff that, "I'm going to have to ask you to shut your camera off or go outside." (4:39). Plaintiff ignored the warning and remained inside the office while continuing to record.

A few minutes later, Plaintiff offered to wait outside to meet the police, which had apparently been called, but she returned a few minutes later and continued to record despite McGUIRE's previous warning. (7:50-13:15). Shireman and Rowe entered the office at about 16:56, some twelve minutes after McGUIRE's initial warning to Plaintiff. At 17:29, Plaintiff left her chair in the customer waiting area and approached Shireman, Rowe, and McGUIRE where they were talking. At about 17:42, McGUIRE can be heard to use the word "trespassing." Rowe then asked Plaintiff to "step over here" because he was "conducting an investigation." Plaintiff responded that she was "in public," then Rowe confirmed that he was ordering her to do so because she was obstructing justice. At about 18:00, Plaintiff indicated that she would "stand over here and record it, then." She moved away then trained the camera on McGUIRE, Shireman, and Rowe as they spoke.

At about 18:26, following a brief discussion with Shireman, McGUIRE informed Plaintiff that she "can't come in here anymore, we're gonna have them order a trespass." Plaintiff then asked for a "written trespass," and Shireman responded, "Sure." Plaintiff asked Shireman if she will be arrested if she does not leave the premises, to which Shireman responded, "Yes, ma'am, for trespass after warning." Plaintiff responded that "I'll leave under threat of arrest." As they walked out, Plaintiff said, "I'll get a written trespass from you, then," and asked Shireman for his name and badge number, which he provided.

At 19:03, Plaintiff again asked for a "written trespass," and he asked her for identification. At about 19:15, Plaintiff again asked for a written trespass, to which Shireman responded, "Not right now," and said she would need to "get it from "records." At 19:20, Shireman confirmed that Plaintiff was issued a trespass. At 19:23, Plaintiff asked for and received Rowe's name and badge number. Rowe informed her that he was in charge and that Plaintiff would be arrested if she went back inside. Plaintiff informed Rowe that she was not refusing to leave, but that Rowe had just violated her rights because the PCTC office is open to the public. Plaintiff informed Shireman and Rowe at about 19:56 that "you'll definitely be hearing from me," presumably in reference to this lawsuit.

Exiting the facility at about 20:00, Plaintiff encountered Dade City Officer Del Valle, who was there to talk to "his sergeant," and requested his name and

badge number, which he gave. At 20:18, Plaintiff, then outside on the street, asked Shireman "how does it feel to be a tyrant?" At 20:25, Shireman asked Plaintiff to provide her identification, and Rowe indicated to her that she can be placed under arrest for her failure to provide it. Plaintiff responded that she had no identification but could give her name under the threat of arrest, to which Rowe responded, "That would be great." At about 20:45, she gave her name and date of birth to Officer Del Valle and said that is all she is required to give. Del Valle then proceeded to verify the information, after which Plaintiff informed the officers that they had "officially" been labelled "tyrants" (apparently, by her). At 21:20, Rowe informed Plaintiff that "we were called here for a disturbance," including taping behind the PCTC counter, whereupon he was questioned by Plaintiff concerning his knowledge of case law about recording in a public place. Plaintiff contended she had a right to be in the PCTC facility to "receive service" and thereafter sought to litigate that right on the sidewalk without substantive response from Rowe or Shireman.

Following Plaintiff's harangue of another officer on scene, Shireman thanked Plaintiff at around 24:22 and told her to have a nice day, at which point Shireman, Rowe, and the other officer dispersed whilst ignoring Plaintiff's catcalls of "tyrants." Around 25:00, Plaintiff followed Shireman on the sidewalk and exclaimed "absolutely disgusting," to which Shireman replied, "Have a nice day,

ma'am." Plaintiff replied, "Fuck you." At around 25:40, Plaintiff encountered Rowe in his vehicle and questioned him about his feelings on tyranny, to which Rowe indicated that Plaintiff should bring any issues concerning her having been trespassed to the Pasco County government because "we're only doing as they requested." Plaintiff proceeded to argue her rights with Rowe up to about 27:45, at which point Plaintiff launched calls of "shame," "tyrants," and "oath breakers" at Shireman while he was on the phone. This lasted for about a minute and ended the recording relative to Shireman and Rowe.

On these facts, Plaintiff brings three claims against McGUIRE pursuant to 42 U.S.C. § 1983. She alleges two violations of the First Amendment—the first because she was trespassed from the PCTC facility despite, she claims, having broken no laws, and the second because she was retaliated against for having exercised her right to record the government official Defendants. (Dkt. 1-2 at 3). Plaintiff also claims a violation of her Fourteenth Amendment due process right by "taking my liberty interest in public property" without a hearing or appeal process.

## II.    McGUIRE is entitled to Qualified Immunity

**McGUIRE is entitled to qualified immunity.** "Qualified immunity offers complete protection for individual public officials **performing discretionary functions** insofar as their conduct **does not violate clearly established statutory**

or constitutional rights of which a reasonable person would have known.'"

*Leslie v. Hancock County Board of Education,* 720 F.3d 1338, 1345 (11th Cir. 2013).

Courts are "permitted to exercise (their) sound discretion in deciding which of

the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances of a particular case in hand." *Loftus v. Clark-Moore,* 690

F.3d 1200, 1204 (11th Cir. 2012). The Supreme Court has "stressed the importance

of resolving immunity questions at the earliest possible stage in litigation."

*Pearson v. Callahan,* 555 U.S. 223, 232 (2009), and qualified immunity "may be

raised and considered on a motion to dismiss." *Corbitt v. Vickers,* 929 F.3d 1304,

1311 (11th Cir. 2019).

      "[T]o obtain qualified immunity, an official must first establish that he acted

within his discretionary authority." *Leslie,* 720 F.3d at 1345. In the Complaint,

Plaintiff pleads, and therefore admits, that McGUIRE "…was employed by the

Pasco County Tax Collector as a manager at all times relevant to the allegations in

this complaint…" (Dkt. 1-2, ¶2). While this allegation is sufficient by itself to

establish that McGUIRE was acting within her discretionary authority as an office

manager for the PCTC, McGUIRE has also filed an affidavit, **Exhibit 1 to this**

**motion**[6], swearing and affirming that she was acting within the scope of her

---

[6] This affidavit is filed pursuant to Fed.R.Civ.P. 12(d), which allows matters outside the pleadings to be presented for consideration by the court, subject to the terms of the rule, when ruling on a Fed.R.Civ.P. 12(b)(6) motion.

discretionary authority when attending to Plaintiff on the date in question, that McGUIRE was performing a legitimate job-related function or functions, and that all actions taken by her on the date in question concerning Plaintiff were within her authority and power as an officer manager to utilize. *See Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 *7 (M.D. Fla. Dec. 9, 2019).

Consequently, the burden shifts to the Plaintiff to establish that McGUIRE violated Plaintiff's constitutional rights and that the rights involved were "clearly established" at the time of the putative misconduct." *Leslie,* 720 F.3d at 1345; *Terrell v. Smith,* 668 F.3d 1244, 1250 (11th Cir. 2012). Because she cannot do so, the Complaint against McGUIRE must be dismissed.

## III.    Count I should be dismissed.

### a.    *First Amendment Law, including Forum Analysis*

"The **First Amendment** protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). The **First Amendment** right to record police activity in public is probably clearly established. *Id., Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 *7 (M.D. Fla. Dec. 9, 2019). *However, the right to record within a government building or nonpolice public employees (such as McGUIRE) working inside a government building is another matter.* The right to record unfettered within any government building,

to record nonpolice public employees working inside a government building, or to record private citizens conducting sensitive, private business inside a government building is not guaranteed simply because the PCTC facility is owned by the government. *Bloedorn v. Grube,* 631 F.3d 1218, 1230 (11th Cir. 2011) (holding "(i)t is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government"); *Sheets v. City of Punta Gorda,* 415 F.Supp.3d 1115, 1122-23 (M.D. Fla. 2009). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 799-800 (1985). Like all First Amendment protections, the right to film or record is "subject to reasonable time, manner and place restrictions." *Smith v. City of Cumming,* 212 F.3d at 1333. To this end, "courts use 'forum analysis to evaluate government restrictions on purely private speech that occurs on government property." *Keister v. Bell,* 879 F.3d 1282, 1288 (11th Cir. 2018).

      **b.**    ***Public Forum Analysis***

There are several different forums. *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 679 & n.11 (2010). One type

is a **limited public forum**[7], *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-70, (2009), which is the type of forum at issue in this case. Because the government chooses how wide to swing open the gate of a limited public forum, it may allow access only to certain speakers based on their identity. *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49, (1983)). So "a speaker may be excluded . . . 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'" *Id.* (quoting *Cornelius*, 473 U.S. at 806). This distinction matters because the type of forum determines the level of scrutiny applied." *Keister*, 879 F.3d at 1288. A limited public forum "exists where a government has reserved [it] for certain groups or for the discussion of certain topics." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017) (alteration accepted) (*quoting Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, __ U.S. __, 135 S.Ct. 2239, 2250, 192 L.Ed.2d 274 (2015)). So a limited public forum is not "open to the public at large for discussion of any and all topics." *Id.* And it "can be set up to grant only 'selective access' to [the] class" for which it is reserved. *Id.* (*quoting Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679-80, (1998)).

This Court can determine from the video that the PCTC facility is a limited public forum. The video and common-sense show that the PCTC office is a place

---

[7] The other two types of fora are traditional public forums and designated public forums. *Bloedorn,* 631 F.3d at 1230.

where citizens go to conduct transactions concerning automobile registrations, driver licenses, taxes, births and other matters requiring the presentation and receipt of highly personal and private information. There is no indication that any portion of it is dedicated to any form of expression. It is, to the contrary, a business office, and the government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Greer v. Spock*, 424 U.S. 828, 836 (1976). Accordingly, the PCTC facility is a nonpublic forum that is not by tradition or designation a forum for public communication, wherein the government can restrict access so long as the restrictions are reasonable and not an attempt to suppress expression due to opposition to the speaker's view. *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076 (11th Cir. 2016); *Daniel v. City of Tampa*, 38 F.3d 546, 549-50 (11th Cir. 1994). The PCTC's policy to arrange for videotaping in advance and protect the personal and confidential information of its customers is entirely reasonable and does not suppress expression based on opposition to any speaker's view.

Even construing the facts most favorably to Plaintiff based on the PCTC policy's allowance of videotaping and recording under limited and controlled circumstances, the PCTC office is, at best, a limited public forum. In such a forum, the government chooses how wide to swing open the gates of expression, and it may allow access only to certain speakers based on their identity. *Pleasant Grove*

*City, Utah v. Summum, Utah,* 555 U.S. at 469-70. Restrictions made on expressive activity in a limited public forum must be only reasonable and viewpoint neutral. *Bloedorn*, 631 F.3d at 1231.

Here, the PCTC's policy swings the gate open cautiously but reasonably wide. The policy explicitly allows for recordation with the prior approval of the tax collector with explicit intent to safeguard the private and confidential information of its customers. The policy is reasonable and viewpoint neutral, and the trespass warnings issued to Plaintiff were lawful. Even if the Court determines the trespass warnings were not lawful, a diligent search has revealed no clearly established law that would have placed McGUIRE on notice of Plaintiff's alleged unrestricted right to record citizens and employees within a government building owned by another agency which has a legal duty to protect the confidentiality of customer records and conversations and a content-neutral policy in place to do so (see below). Accordingly, Count I should be dismissed.

### c.    Plaintiff cannot Show a Violation of a Clearly Established Right

Given the foregoing, Plaintiff has not pled, and cannot show, a violation of a clearly established right. "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019). *Metz v. Hines,* 2019 U.S. Dist. LEXIS 212180 (M.D. Fla. Dec. 9,

2019). "Indeed, the salient questions is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Corbitt,* 929 F.3d at 1312; *Metz.*

In recent similar cases, neither the parties nor the Court could find any controlling law on similar First Amendment issues, including a claimed "1st Amendment right to free press." *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019); *Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 (M.D. Fla. Dec. 9, 2019); *Watkins v. Good*, 2024 U.S. Dist. LEXIS 40407 (S.D. Fla. March 7, 2024)[8].

*Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 *1 (M.D. Fla. Dec. 9, 2019), is a case particularly analogous to the instant matter. In *Metz,* Metz went to the County Administration Building to investigate a "no recording" sign. Once inside, a County employee approached Metz and told him to leave. *Id*. At some point, the police arrived, where Hines, the County employee, told the police that Metz "should be punched in the throat." *Id*. Based on these simple facts, the District Court found that qualified immunity was appropriate in deciding a motion to dismiss for Hines. *Id*. at 7. Metz simply could not show a violation of a clearly established right under the First Amendment ***and the court found that***

---

[8] Both *Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 (M.D. Fla. Dec. 9, 2019) and *Watkins v. Good*, 2024 U.S. Dist. LEXIS 40407 (S.D. Fla. March 7, 2024) granted qualified immunity at the motion to dismiss stage under nearly identical circumstances as the instant case.

*there was no clear doctrine on whether the public could film inside a government*

*building. Id.* As the *Metz* court stated, "(i)f a courtroom full of lawyers found the

contours of this purported right unsettled after exhaustive research and argument,

the court will not hold Hines to a higher standard". The same analysis applies in

this case. There is no clear legal doctrine concerning whether Plaintiff had any

right to record in the PCTC's offices in Dade City, and McGUIRE had no "fair

warning" that her alleged conduct was unconstitutional. McGUIRE is therefore

entitled to qualified immunity from Plaintiff's suit.

### IV. Count II should be dismissed.

In Count II, Plaintiff asserts that she was retaliated against under the First

Amendment because the Defendants "did not like me" recording them in the

course of their duties and conspired to violate her rights. (Dkt. 1-2 at 3). As

explained above, there has been no First Amendment violation, and the claim fails.

Further, Count II must be dismissed because it fails to state a claim and because

its allegations are belied by the video.

To state a First Amendment retaliation claim, "a plaintiff must demonstrate

that (1) she engaged in protected speech; (2) the defendant's conduct adversely

affected the protected speech; and (3) a causal connection exists between the

speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480

(11th Cir. 2016). Plaintiff has alleged none of these elements and has alleged no

facts suggesting a meeting of the minds among multiple defendants regarding a conspiracy. Count II should be dismissed on this basis alone. *Mickens v. Tenth Judicial Circuit*, 181 Fed. Appx. 865, 876 (11th Cir. 2006) ("The core of a conspiracy claim is an agreement between the parties; thus, where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal").

More importantly, there is no indication from the video that McGUIRE "did not like" Plaintiff recording McGUIRE or other PCTC employees in the course of their duties (to the extent that not liking something can be construed as unlawful in the first instance) or took any unconstitutional adverse action relative to it, or that Defendants engaged in any conspiracy to deprive Plaintiff of her rights. Instead, the video shows Plaintiff causing a disturbance and McGUIRE and Defendants Shireman and Rowe respectfully and legally having Plaintiff removed from the PCTC offices, while violating no constitutional rights of Plaintiff. The video demonstrates that McGUIRE's conduct was respectful, calm and professional throughout the encounter despite Plaintiff's abusive behavior. Finally, and clearly, McGUIRE's conduct did not violate any clearly established rights enjoyed by Plaintiff, so she is entitled to qualified immunity.

**V.  McGUIRE is not a defendant in Count III, and therefore offers no response.**

McGUIRE is not named as a defendant in Count III, and therefore offers no response.

**VI.  Count IV should be dismissed.**

In Count IV, Plaintiff alleges that McGUIRE violated her due process rights under the Fourteenth Amendment by taking her "liberty interest" in public property without a hearing or appeal process. (Dkt. 1-2 at 3). Plaintiff is again incorrect that her claimed rights are limitless.

The Due Process Clause requires "that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (internal citations omitted)). The government must provide the required notice and opportunity for a hearing "at a meaningful time and in a meaningful manner," although the notice and hearing may be postponed until after the deprivation has occurred. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

A procedural due process claim requires a plaintiff to prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Graydon v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

The claim fails on all three elements. The first element fails because Plaintiff surrendered by her conduct whatever liberty interest she may have had in being in the PCTC office. While there exists a generalized constitutionally protected liberty interest in being in parks or other lands open to the public, *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (plurality opinion) (citations omitted), there is no "constitutional right to use public parks under all conditions and at all times." *Catron*, 658 F.3d at 1267 n.5. More importantly, there is no liberty interest in entering into any governmental office without restriction. *Williams v. Town of Greenburgh*, 535 F.3d 71, 76–77 (2d Cir. 2008); *Doe v. City of Lafayette*, 377 F.3d 757, 770–71 (7th Cir. 2004) (no liberty interest implicated where city banned plaintiff from using city's public parks for "innocent, recreational purposes"); *Souders v. Lucero*, 196 F.3d 1040, 1045 (9th Cir.1999) (no constitutionally protected interest in accessing public university campus without restriction); *Chafin v. Stasi*, 2015 WL 1525542 at *11 (D. Colo. March 31, 2015) (removal of plaintiff from public recreation center "does not implicate a liberty interest"). Critically, a person may forfeit any such liberty right by trespass or other violation of law. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994). That is exactly what happened in the instant case. Plaintiff took the incorrect position that she was permitted to do exactly as she pleased at the PCTC facility merely because it is publicly owned.

She was lawfully trespassed as noted herein. She did not enjoy the claimed liberty interest in the first place and, even if she did, she forfeited it by her conduct.

As to the second and third elements, they are not applicable, and cannot be violated, if there is no deprivation of a constitutionally-protected liberty or property interest, as is the case here. Clearly, under the facts pled in this case, there is no Fourteenth Amendment due process violation.

WHEREFORE, for the reasons stated herein, Defendant Lisa McGuire respectfully requests the Court to enter an order dismissing this case (specifically, as to McGUIRE, Counts I, II, and IV) with prejudice, along with such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

*/s/ Frederick T. Reeves*
Frederick T. Reeves, Esq.
Fla. Bar No. 499234
**Lead Counsel**
Frederick T. Reeves, P.A.
5709 Tidalwave Drive
New Port Richey, Florida 34652
Telephone (727) 844-3006
Facsimile (727) 844-3114
freeves@tbaylaw.com
vicki@tbaylaw.com

Attorneys for Defendant, LISA McGUIRE

## Local Rule 3.01(g) Certification

The undersigned hereby certifies that he has conferred with the parties or their counsel who have appeared in this case, and their responses are as follows: (1) Plaintiff **opposes** the motion, and Plaintiff and the undersigned attorney communicated/conferenced by e-mail; and (2) counsel for Defendants, SGT. SHIREMAN DCPD, and CAPT. ROWE, DCPD, **do not object** to the relief sought in the motion, and the attorney for these defendants and the undersigned attorney communicated/conferenced by e-mail.

*/s/ Frederick T. Reeves*
Frederick T. Reeves, Esq.


## Certificate of Service

I HEREBY CERTIFY that, on June 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system resulting in service on the following:

Lana Patrick, *pro se*
9378 Arlington Expressway PMB 204
Jacksonville, Florida 32225

Jay Daigneault, Esq.
Randol D. Mora, Esq.
Trask Daigneault, LLP
1001 S. Ft. Harrison Avenue, Ste. 201
Clearwater, Florida 33756

*/s/ Frederick T. Reeves*
Frederick T. Reeves, Esq.