UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LANA PATRICK,**

    **Plaintiff,**

v.                                            **Case No: 8:24-cv-999-MSS-NHA**

**LISA MCGUIRE, SERGEANT
SHIREMAN, and CAPTAIN ROWE,**

    **Defendants.**

_____

**<u>ORDER</u>**

    **THIS CAUSE** comes before the Court for consideration of the Motion to Dismiss filed by Defendants Sergeant Robert Shireman and Captain William Rowe, (Dkt. 15), Plaintiff's response in opposition thereto, (Dkt. 19), the Motion to Dismiss filed by Defendant Lisa McGuire, (Dkt. 16), and Plaintiff's response in opposition thereto. (Dkt. 20) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** the Motions.

    **I.**      **BACKGROUND**

    Plaintiff initiated this action against Defendants on April 24, 2024. (Dkt. 1) In the Complaint, Plaintiff sues Defendants Shireman, Rowe, and McGuire in their individual capacities under 42 U.S.C. § 1983 for alleged violations of the First Amendment and the Fourteenth Amendment to the U.S. Constitution. (Dkt. 1-2 at 3)

Plaintiff also sues Defendants Shireman and Rowe in their individual capacities under 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment. (Id.)

In support of her claims, Plaintiff alleges the following facts. Plaintiff is an independent journalist and activist who lives in Duval County, Florida. (Id. at ¶ 1) On May 16, 2023, Plaintiff visited the building containing the Pasco County Tax Collector's Office (the "Office"). (Id. at ¶ 6) Plaintiff recorded her entire visit with a camera.[1] (Id.) At no time did Plaintiff enter a restricted area of the building. (Id. at ¶ 7) She visited only those areas of the county building that were open to the public. (Id.)

A few minutes after Plaintiff entered the Office with her camera, one of the employees of the Office handed Plaintiff a copy of the Office's policy against video recording. (Id. at ¶ 8) The copy of the policy is visible in the video. (Dkt. 6 at 4:38) It states, in relevant part,

> The Pasco County Tax Collector's Office (hereafter "PCTC") will make every effort to accommodate journalists or any other individual(s) who wish to video, photograph, record, film, or interview within the interior of any PCTC facility. This policy is in place to protect the confidentiality of records and documents exempt from public disclosure, to prevent disruptions of the PCTC's legitimate public business and rendering of public services, and to foster a safe and orderly environment for PCTC customers and employees.
>
> . . . .
>
> No videotaping, photographing, recording, filming, or interviewing may be conducted inside any PCTC facility by anyone without prior approval of the tax collector. Violators will be requested to cease such activity immediately and/or leave the facility . . . .

---

[1] Plaintiff filed the video recording as an attachment to the Complaint. (Dkt. 6) The video records the events that form the basis of Plaintiff's claims. The video is central to Plaintiff's claims and Defendants do not dispute its authenticity. Accordingly, the Court will review the video in its consideration of the Motions to Dismiss. Baker v. City of Madison, 67 F.4th 1268, 1276 (11th Cir. 2023).

> All requests for approval to videotape, photograph, record, film, or interview must be submitted as far in advance as possible [to the Assistant Tax Collector for Communications and Special Projects] . . . .
>
> Identification numbers and documents, such as passports, driver licenses, ID cards, and Social Security cards or numbers, are confidential in nature and therefore exempt from public disclosure by the PCTC. Videotaping, photographing, recording, or filming personal documents or conversation that contain information exempt from public record is prohibited.

(Id.) Despite being handed the policy, Plaintiff did not stop recording or leave the Office. (Dkt. 1-2 at ¶ 9) Defendant Lisa McGuire said to Plaintiff, "I'm going to have to ask that you either shut your camera off or go outside, please." (Dkt. 6 at 4:40) Plaintiff said, "Okay, have a nice day. Thank you." (Id.) Plaintiff did not shut off her camera or leave the Office. (Id.)

Plaintiff alleges the Office "attempt[ed] a hecklers veto" to pressure her to stop recording. (Dkt.1-2 at ¶ 10) Plaintiff alleges the Office stopped serving its customers due to Plaintiff's recording, and Plaintiff alleges the Office's intent was to incite the customers to pressure her to stop recording. (Id.)

Plaintiff's video depicts the other customers in the Office expressing their frustration with Plaintiff. (Dkt. 6 at 6:34–7:42; 13:22–16:56) Several customers used foul language or expletive gestures toward Plaintiff. (Id.)

In the Complaint, Plaintiff alleges she advised employees of the Office that she was "willing to wait outside for the police so that they may continue to serve the public instead of them inciting a breach of the peace." (Dkt. 1-2 at ¶ 11) The video depicts this conversation. (Dkt. 6 at 7:59) The Office employees thanked Plaintiff, and Plaintiff exited the Office. (Id.) After waiting outside the Office for several minutes, Plaintiff

3

called the Pasco County Communications Line to ask whether officers had been dispatched to the Office. (Id. at 10:00) When the operator told Plaintiff that no call for service was pending for the Office's address, Plaintiff went back inside the Office and continued recording. (Id. at 12:59)

Defendants Shireman and Rowe arrived at the Office a little while later. (Id. at 17:05) Plaintiff approached Defendants Shireman, Rowe, and McGuire, who were discussing trespassing Plaintiff. (Id. at 17:39; Dkt. 1-2 at ¶ 12) "As [Plaintiff] [tried] to record what they [were] saying, Capt. Rowe threaten[ed] [Plaintiff] with obstruction if [Plaintiff] [did not] move from the public area [she] was in." (Id.) Plaintiff moved several feet away from Defendants, who continued to speak with each other. (Dkt. 6 at 18:12)

Defendant McGuire then approached Plaintiff and informed her that she was no longer allowed in the Office. (Dkt. 1-2 at ¶ 13) Defendant Shireman told Plaintiff that if she did not leave the building, she would be arrested. (Id. at ¶¶ 13–14) Defendant Rowe also told Plaintiff that if she went back into the building, she would be arrested for trespassing. (Id. at ¶ 15) Plaintiff alleges Defendants Shireman and Rowe "lie[d]" to her and said that she was required by law to provide them with her identification for the written trespass warning, and that failure to do so would result in her arrest. (Id. at ¶ 16) As recorded in the video, Defendant Shireman asked Plaintiff, "Do you mind sharing your identification with me?" (Dkt. 6 at 18:45) She refused. (Id.) Defendant Shireman said, "Okay." (Id.) Then, Plaintiff asked for a written trespass warning. (Id. at 18:52) Defendant Shireman said he could not give her a written

4

trespass warning without her identification. (Id. at 19:08) Plaintiff again refused to give her identification, so Defendant Shireman said he would create a written trespass warning with the name "Jane Doe," which Plaintiff could retrieve from "records." (Id.) Later, Defendant Shireman asked for her identification again. (Id. at 20:22) Plaintiff asked, "Is it required by law?" (Id.) Defendant Rowe said that it was. (Id.) Plaintiff asked, "So, if I don't give it you, then what?" (Id.) Defendant Rowe said, "Then we can place you under arrest." (Id. at 20:30) Then, Plaintiff said she did not have identification but would give her name under "threat of arrest." (Id.) She then gave her name and volunteered her date of birth to one of the officers present. (Id.) When the officer asked, "Have you ever had a Florida I.D.?" Plaintiff responded, "That's all I'm required to give to you." (Id. at 20:01) The officer replied, "I'm just asking the question." (Id.) He then walked away to verify Plaintiff's information. (Id.) At no point did any of the officers touch Plaintiff. The officers left the scene without obtaining Plaintiff's identification.

Plaintiff raises four causes of action in the Complaint. First, Plaintiff alleges Defendants unlawfully trespassed her from a public building in violation of her First Amendment rights. (Dkt. 1-2 at 3) Second, Plaintiff alleges Defendants retaliated against her for exercising her purported First Amendment right to record government officials in the course of their duties and that this retaliation violated the First Amendment. (Id.) Next, Plaintiff alleges Defendants Shireman and Rowe violated Plaintiff's Fourth Amendment rights when they allegedly threatened to arrest her if she did not provide her identification. (Id.) Finally, Plaintiff alleges Defendants

5

violated her Fourteenth Amendment right to due process by taking her liberty interest in public property without a hearing. (Id.)

Defendants Shireman, Rowe, and McGuire move to dismiss the Complaint with prejudice. (Dkt. 15; Dkt. 16) In their Motions, Defendants raise qualified immunity in defense to Plaintiff's claims, and contend the Complaint fails to a claim against them under Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In considering a motion to dismiss and evaluating the sufficiency of a complaint, a court must accept the well-pleaded facts as true and construe them in the

light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "this leniency does not give the court a license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." Gibbs v. United States, 865 F. Supp. 2d 1127, 1133 (M.D. Fla. 2012), aff'd, 517 F. App'x 664 (11th Cir. 2013) (internal citations omitted).[2]

### III.  DISCUSSION

For each of the counts raised against them, Defendants Shireman, Rowe, and McGuire argue that Plaintiff fails to allege the violation of any constitutional right. Moreover, Defendants argue Plaintiff's allegations fail to show they violated a clearly established right of Plaintiff's. For this reason, Defendants argue they are entitled to qualified immunity against Plaintiff's claims.

"State officials enjoy qualified immunity from complaints for damages under section 1983 when they act within their discretionary authority and do not violate any clearly established federal right." Smart v. England, 93 F.4th 1283, 1287–88 (11th Cir. 2024) (citations omitted). An official who proves he acted within his discretionary

---

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

authority is entitled to qualified immunity unless (1) he violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was clearly established at the time. Id. at 1288 (citations omitted).

Defendants each acted within their discretionary authority when they engaged in the allegedly unlawful conduct. "The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019). Courts should consider "'whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" Tisdale v. Gravitt, 51 F. Supp. 3d 1378, 1390–91 (N.D. Ga. 2014) (quoting Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)). To determine whether an act was committed within an official's discretionary authority, courts "'temporarily [put] aside that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.'" Id. at 1391 (quoting Holloman, 370 F.3d at 1265).

Here, Defendants Shireman and Rowe acted within their discretionary authority when they informed Plaintiff she would be arrested if she did not leave after receiving Defendant McGuire's trespass warning and when they allegedly threatened to arrest her if she did not provide identification. According to Plaintiff's allegations, Defendants took these alleged actions while on duty as police officers and while

8

conducting investigative functions. Thus, they were acting within their discretionary authority.

Likewise, Defendant McGuire acted within her discretionary authority when she told Plaintiff to leave the Office. Defendant McGuire took this action pursuant to the Office's policy against video recording and in pursuit of her job-related goal of removing the disruption caused to the Office's function by Plaintiff's lack of compliance with the policy.

Thus, Defendants have established they are protected by qualified immunity. Plaintiff can overcome Defendants' qualified immunity, however, if Plaintiff alleges Defendants violated a constitutional right and that the right was clearly established at the time of the violation. Smart, 93 F.4th at 1288 (citations omitted). Defendants argue Plaintiff fails to do so.

### a. Counts I and II – Plaintiff's First Amendment Claims

Defendants argue Plaintiff fails to show her First Amendment rights were violated. Specifically, Defendants argue that the Office is either a limited public forum or a nonpublic forum; therefore, the government may restrict the exercise of free speech in the Office if the restrictions are reasonable and do not discriminate based on viewpoint. (Dkt. 15 at 13; Dkt. 16 at 15) To that end, Defendants argue the Office's policy against video recording is reasonable and viewpoint-neutral. (Dkt. 15 at 13-24; Dkt. 16 at 16) Therefore, Defendants assert the Office's enforcement of the policy did not violate Plaintiff's First Amendment rights. (Id.) In response, Plaintiff argues the First Amendment protects her right to record in a government building and that the

9

Office's policy is not "backed by law." (Dkt. 19 at 4; Dkt. 20 at 4) Plaintiff further contends that the forum analysis is inapplicable to this case because video recording is not expressive activity. (Id.) In support of this contention, Plaintiff cites Price v. Garland, 45 F.4th 1059 (D.C. Cir. 2022). (Id.)

Courts disagree as to whether video recording is expressive conduct, which implicates the freedom of expression, or non-communicative information-gathering, which implicates the freedom of access to information. Knight v. Montgomery Cnty., 470 F. Supp. 3d 760, 765–67 (M.D. Tenn. 2020) (collecting and comparing cases). Compare, e.g., S.H.A.R.K. v. Metro Parks Serving Summit Cnty., 499 F.3d 553, 559 (6th Cir. 2007) (discussing the right to video record as protected by the First Amendment through a right-of-access theory rather than a freedom-of-expression theory), with Animal Legal Defense Fund v. Wasden, 878 F.3d 1184, 1203 (9th Cir. 2018) (stating the "act of recording is itself an inherently expressive activity"). The Supreme Court has not spoken on the question. The circuit courts agree, however, that the government may impose restrictions on video recording without violating the First Amendment, depending on the circumstances and the nature of the restriction. See S.H.A.R.K., 499 F.3d at 560–61 (describing the analysis for evaluating a rule that restricts a person's right to access information—in this case, the right to record video— as a two-part inquiry that considers whether the rule is content-based and whether the rule reasonably relates to the government's stated interest in invoking the rule); Price v. Garland, 45 F.4th 1059, 1072 (D.C. Cir. 2022) (citations omitted) (concluding that for all noncommunicative First Amendment activity, like video recording, restrictions

10

"'must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum'").

Eleventh Circuit precedent dictates that the Court apply the forum analysis to Plaintiff's claims. Although the Eleventh Circuit has not recently or definitively spoken on whether video recording implicates the freedom of expression or the right of access to information, its First Amendment case law indicates video recording implicates both rights. See Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (concluding a committee's prohibition of the plaintiffs recording its public meeting impacted the plaintiffs' ability to "obtain access to and present information about" the proceeding, and "touched on expressive conduct protected by the Free Speech Clause"). The Circuit applies the forum analysis to determine whether a restriction on video recording impermissibly interferes with a plaintiff's First Amendment rights. See id. (analyzing whether the committee's prohibition was a "time, place, and manner" restriction on expressive conduct);[3] Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) (stating the "First Amendment protects the right to gather information about what public officials do on public property" and that this protection is subject to reasonable time, place, and manner restrictions); Crocker v. Beatty, 995 F.3d 1232, 1242 (11th Cir. 2021) (citations omitted) ("Smith's reference to 'reasonable time, manner and place restrictions' . . . calls to mind either 'a traditional public forum—

---

[3] An analysis of whether a restriction on speech is a "time, place, or manner" restriction implicates the forum analysis. See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) ("Our cases make clear . . . that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech . . . .").

11

parks, streets, sidewalks, and the like'—or a 'designated public forum'—*i.e.*, a place made a public forum by government action . . . . Smith's allusion to these restrictions indicates that the plaintiffs there attempted to film police activity while in a public forum of some sort."); see also Sheets v. City of Punta Gorda, 415 F. Supp. 3d 1115, 1121 (M.D. Fla. 2019) (citing Keister v. Bell, 879 F.3d 1282, 1288 (11th Cir. 2018)) (applying the forum analysis to the plaintiff's claim that an ordinance prohibiting the recording of City employees in City Hall without their consent violated the First Amendment).

    The Supreme Court has recognized four kinds of forums: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum. McDonough v. Garcia, 116 F.4th 1319, 1325 (11th Cir. 2024). Traditional public forums, like streets and parks, are places that have traditionally "been held in trust for the use of the public and . . . have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Id. at 1323 (citations and internal quotations omitted). The designated public forum, like a civic auditorium or a public theater, is "public property which the State has opened for use by the public as a place for expressive activity." Id. (citations and internal quotations omitted). The limited public forum is a place created for speech by certain groups or for the discussion of certain topics. Id. at 1325; id. at 1329 (concluding that because the city council limited its public comment periods to speech on matters "'pertinent to the City,'" the "city council meetings are limited public forums"). A nonpublic forum, like a jail or a military base, is a place that "'is not by tradition or

designation a forum for public communication.'" Id. at 1323 (citations and internal quotations omitted). The degree to which the First Amendment protects speech on government property depends on "the kind of forum the government is attempting to regulate." Bloedorn v. Grube, 631 F.3d 1218, 1230 (11th Cir. 2011).

The Office is not a traditional public forum. Tax Collector's offices have not traditionally been used for expressive purposes, such as assembly or the discussion of public questions. The Office is also not a designated public forum. The government has not opened up the Tax Collector's office as a place for the public to use for expressive activity.

Thus, the Office is either a limited public forum or a nonpublic forum. For both limited public forums and nonpublic forums, the government may impose restrictions as long as they are reasonable and viewpoint neutral. McDonough, 116 F.4th at 1324. For limited public forums, the restrictions must be "'reasonable in light of the purpose served by the forum.'" Id. (citations omitted). For nonpublic forums, the restrictions must be reasonable "in order to 'reserve the forum for its intended purposes[.]'" Id. (citations omitted).

In the context of a limited public forum, the government "may allow access only to certain speakers based on their identity." Sheets, 415 F. Supp. 3d at 1122 (citing Bloedorn, 631 F.3d at 1231). "[A] speaker may be excluded . . . 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'" Bloedorn, 631 F.3d at 1231 (quoting Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 805 (1985)). "[A] government 'workplace, like any place of employment,

13

exists to accomplish the business of the employer[,]'" and the government may "'exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees.'" Sheets, 415 F. Supp. 3d at 1122 (quoting Cornelius, 473 U.S. at 805).

Here, assuming the Office is a limited public forum, the Office may choose to permit access only by those speakers seeking service from the Office. Plaintiff does not allege she was a member of that class, and the video establishes she was not. The Office's policy against video recording is a reasonable means of reserving the Office for its intended purpose. The Office's intended purpose is to efficiently assist county residents with matters related to government documents. Its policy states it "is in place to protect the confidentiality of records and documents exempt from public disclosure . . . ." (Dkt. 6 at 4:38) "Identification numbers and documents, such as passports, driver licenses, ID cards, and Social Security cards or numbers, are confidential in nature and therefore exempt from public disclosure by the PCTC." (Id.) If the Office were unable to protect the confidentiality of residents' information while they transact with Office employees in the main lobby area, the Office would not be able to serve as many customers at once, disrupting its efficiency. Significantly, the policy does not prohibit any and all video recording. It merely requires a person to obtain prior approval if they wish to record video inside the Office. (Id.) The Court finds the Office's policy restricting video recording is reasonable.

The Office's policy is also viewpoint neutral. "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the

14

opinion or perspective of the speaker is the rationale for the restriction.'" Jackson v. McCurry, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995)). The Office's policy applies to "journalists or any other individual(s) who wish to video, photograph, record, film, or interview within the interior of any PCTC facility." (Dkt. 6 at 4:38) The policy contains no mention of a restriction based on the viewpoint of the person wishing to record. (Id.)

Because it is both reasonable and viewpoint-neutral, the Office's policy withstands constitutional scrutiny under Eleventh Circuit precedent. Accordingly, Defendants' actions taken to enforce the policy did not violate Plaintiff's constitutional rights.

Even if the Court were to apply the standard applied in Price v. Garland, 45 F.4th 1059 (D.C. Cir. 2022), as Plaintiff requests, no constitutional violation occurred. In Price, the District of Columbia Circuit found that, "with respect to noncommunicative [F]irst [A]mendment activity such as filmmaking," the forum analysis does not apply. Id. at 1071. Instead, all noncommunicative First Amendment activity "is subject to the same 'reasonableness' standard that applies to restrictions on [F]irst [A]mendment activity in a nonpublic forum: The 'restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum[.]'" Id. at 1072 (citations omitted). As stated *supra*, the Office's policy against video recording is reasonable in light of the purpose served by the forum and viewpoint neutral. Under the reasoning

15

of the District of Columbia Circuit in Price, Plaintiff suffered no constitutional violation.

Plaintiff alleges Defendants "unlawfully [trespassed her] from a publicly accessible area of a public building, without any indication that [she] had broken any laws or had obstructed or impeded any business." (Dkt. 1-2 at 3) There is no question Plaintiff violated the policy against video recording. The Office's policy states, "Violators will be requested to cease such activity immediately and/or leave the facility[.]" (Dkt. 6 at 4:38) The Office employees attempted to inform Plaintiff of the policy against recording. She ignored them, and when Plaintiff refused to stop recording, they asked her to leave. Eventually, the police arrived. Defendants Shireman and Rowe told Defendant McGuire she could warn Plaintiff to leave the property. (Dkt. 6 at 18:12) Once Defendant McGuire did so, Defendants Shireman and Rowe informed Plaintiff that if she did not leave, she would be arrested for trespass after warning.[4] (Id. at 18:30) The Court finds nothing unlawful about these actions as they are alleged and as demonstrated in the video.

Finding no First Amendment violation alleged, Counts I and II of the Complaint are due to be **DISMISSED**.

---

[4] Section 810.08(1), Fla. Stat. (2024), states,

> Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

### b. Count III – Fourth Amendment Claim

Defendants Shireman and Rowe argue they lawfully requested Plaintiff's identification pursuant to an investigatory stop because they had reasonable suspicion that Plaintiff had committed, was committing, or was about to commit trespass or a breach of the peace. (Dkt. 15 at 19) Defendants also contend they had reasonable suspicion Plaintiff violated a Florida Statute against recording the oral communications of a person who exhibits a reasonable expectation of privacy. (Id. at 20–21) Plaintiff responds that because a trespass warning is a civil matter, Defendants could not lawfully detain her or compel her to present her identification. (Dkt. 19 at 5)

Plaintiff fails to establish Defendants Shireman and Rowe committed a Fourth Amendment violation. "'Even when law enforcement officers have no basis for suspecting a particular individual, they may . . . ask for identification . . . provided they do not induce cooperation by coercive means.'" Brooks v. Miller, 78 F.4th 1267, 1280 n.2 (11th Cir. 2023) (quoting United States v. Drayton, 536 U.S. 194, 201 (2002)). "'If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.'" Id. (quoting Drayton, 536 U.S. at 201).

The video attached to the Complaint shows that the first time Defendant Shireman asked Plaintiff to "share" her identification with him, she declined. (Dkt. 6 at 18:45) When Plaintiff asked for a written trespass warning, Defendant Shireman explained that he could not give her a written trespass warning without her identification. (Id. at 19:08) When she again declined to give identification, Defendant

17

Shireman said he would create a written trespass warning with the name "Jane Doe," which Plaintiff could retrieve from "records." (Id.)

Later, when Defendant Shireman asked for her identification a second time, Plaintiff asked, "If I don't give it you, then what?" (Id. at 20:22) Defendant Rowe said, "Then we can place you under arrest." (Id. at 20:30) Plaintiff replied that she did not have identification but gave her name and date of birth. (Id.) The officers did not attempt to coerce her to give any more information. (Id.) They did not arrest her. At no point did the officers behave as if they would arrest her. The video continued to record as Defendants Shireman and Rowe drove away. (Id. at 25:44; 28:31)

The events depicted in the video do not establish a Fourth Amendment violation. Defendants Shireman and Rowe merely asked for Plaintiff's identification. When Plaintiff did not cooperate, Defendants did not induce cooperation by coercive means. Indeed, Plaintiff never cooperated, and Defendants left the scene without obtaining her identification or arresting her.

Plaintiff fails to allege facts to show Defendants Shireman or Rowe violated the Fourth Amendment. Count III is **DISMISSED**.

### c. Count IV – Fourteenth Amendment

Defendants argue Plaintiff did not suffer a Fourteenth Amendment violation because they did not deprive her of any constitutionally protected right. (Dkt. 15 at 24-25; Dkt. 16 at 21-22) Plaintiff's response assumes she had the right to record in the Office and that her removal from the office deprived her of a constitutionally protected right. (Dkt. 19 at 5; Dkt. 20 at 5)

The First Amendment "does not guarantee access to property just because it is owned by the government." Bloedorn v. Grube, 631 F.3d 1218, 1230 (11th Cir. 2011). The Eleventh Circuit has acknowledged "a constitutionally protected liberty interest to be in parks or on other city lands . . . that are open to the public generally." Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011) (citations omitted). However, "a person may forfeit this liberty right by trespass or other violation of law[.]" Id. (citing Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) ("The Constitution does not confer the right to trespass on public lands.")); see Sheets, 415 F. Supp. 3d at 1128 (noting "[no] person has an absolute right to visit City Hall[,] [s]o when the City limits the use of City Hall based on a violation of [an ordinance prohibiting filming City Hall employees without their consent], it is not violating liberty interests").

Plaintiff forfeited her right to access the Office when she failed to comply with the Office's policy and the requests that she either comply with the policy or leave. As stated *supra*, the Office's policy was a constitutional and lawful restriction on access to the Office. Plaintiff cannot show that Defendants deprived her of a constitutional right. Thus, her Fourteenth Amendment claim fails. Count IV is **DISMISSED**.

### IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. The Motion to Dismiss filed by Defendants Shireman and Rowe, (Dkt. 15), is **GRANTED**.

2. The Motion to Dismiss filed by Defendant McGuire, (Dkt. 16), is **GRANTED**.

3. Upon review of the video recording, (Dkt. 6), which the Parties agree accurately depicts the events that form the basis of Plaintiff's claims, the Court finds amendment would be futile. For this reason, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

4. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of November 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person